IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHARON PAIGE RICHEY, et al., | ) | |
| | ) | |
|       Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-CV-219-KFP |
| | ) | |
| AUTO-OWNERS INSURANCE CO., | ) | |
| | ) | |
|       Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sharon Paige Richey and Tommy Richey, individually and as next of kin to their seven minor children, and Devin Brian Frazier filed this lawsuit against Auto-Owners Insurance Company. Plaintiffs assert breach of contract, bad faith, malicious prosecution, and false imprisonment claims against Auto-Owners arising from Auto-Owners' denial of Plaintiffs' homeowner's insurance claim, as well as criminal proceedings initiated against Plaintiffs, following two fires at Plaintiffs' home. Auto-Owners filed a Motion for Summary Judgment (Doc. 23), Plaintiffs filed a response in opposition (Doc. 28), and Auto-Owners filed a reply (Doc. 30). For the reasons set forth below, the Motion for Summary Judgment (Doc. 23) is GRANTED.

## I.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of

*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The

parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on

which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## II.   SUMMARY JUDGMENT REQUIREMENTS

Before setting out the undisputed facts in this case, the Court finds it necessary to reiterate the provisions governing factual assertions for summary judgment motions. Rule 56(c) of the Federal Rules of Civil Procedure requires that "[a] party asserting that a fact cannot be or is genuinely disputed *must* support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Additionally, this Court's Uniform Scheduling Order (Doc. 20) contains the following requirement with respect to dispositive motions:

> In all briefs filed by any party relating to the motion, the discussion of the evidence in the brief *must* be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document. Failure to make such specific reference may result in the evidence not being considered by the court.

Doc. 20 § 2 (emphasis added).

In support of its motion, Auto-Owners has cited specific parts of the record for every fact on which it relies. *See generally* Doc. 26. Plaintiffs' response in opposition, however, fails to conform to either the Federal Rules or this Court's Scheduling Order regarding proper citations to evidentiary materials. *See generally* Doc. 28. Plaintiffs' response is replete with conclusory statements unaccompanied by reference to the record or any supporting evidentiary basis. Indeed, the majority of Plaintiffs' factual allegations contain no citations whatsoever and, where Plaintiffs do include citations, they cite only to an exhibit number with no page or line reference. Additionally, as will be discussed below,

several of the exhibits on which Plaintiffs rely do not support or are directly contrary to Plaintiffs' allegations.

As Plaintiffs were advised in the Court's Scheduling Order, failure to make specific page-line references to specific supporting evidence may result in such evidence not being considered. Doc. 20 § 2. Accordingly, the Court has considered only those factual assertions in Plaintiffs' response citing to the record or with clearly identifiable evidentiary support. *See Pye v. Fifth Generation, Inc.*, 2016 WL 9046788, at *2 (N.D. Fla. Sept. 27, 2016) (declining, under Fed. R. Civ. P. 56(c)(3), to consider evidence supporting assertions for which plaintiffs provided no citations to the record).

## III.   STATEMENT OF UNDISPUTED FACTS

### A.   Undisputed Facts Agreed Upon by Parties

In compliance with the Court's Order directing the parties to file a joint statement of Uncontested Facts (Doc. 27), the parties submitted the following agreed upon undisputed facts (Doc. 31):

1.   Plaintiffs Sharon and Tommy Richey purchased a home located at 226 2nd Street, Montgomery, Alabama on or about December 14, 2016[1] by way of a bond for title. *See* Doc. 24-1.

2.   On or about January 24, 2017, Mrs. Richey signed an application for insurance with Auto-Owners, seeking homeowner's insurance coverage on the subject property. *See* Doc. 24-3.

_____

[1] In their statement, the parties state that Plaintiffs purchased the home on or about December 14, 2017. Doc. 31 at 1. However, based on the evidentiary record, the Court concludes the parties erroneously stated the year of the purchase as 2017; the purchase was on December 14, 2016. *See* Doc. 24-1 (Bond for Title).

3.      Auto-Owners subsequently issued an insurance policy with an effective date of coverage of January 10, 2017. *See* Doc. 24-4.

4.      On January 26, 2017, a fire loss damaged the 226 2nd Street home.

5.      On February 26, 2017, a second fire occurred at the 226 2nd Street address, further damaging the home.

6.      On March 1, 2017, Lt. Peoples, an investigator with the Montgomery Fire Department, sent a letter to Auto-Owners, under Alabama Code § 36-19-41, requesting that Auto-Owners provide a copy of any factual information Auto-Owners had in its file concerning the above referenced fire losses. *See* Doc. 24-5.

7.      Auto-Owners responded to the request and provided the requested information to Lt. Peoples on March 1, 2017. *See* Doc. 24-6. Auto-Owners supplemented its initial response on March 31, 2017, and again on April 4, 2017. *See* Docs. 24-7, 24-8.

8.      The Richeys were indicted and arrested on two separate occasions for Insurance Fraud 1st Degree in relation to the insurance claim submitted to Auto-Owners following the January 26, 2017 and February 26, 2017 fires. The original charges were *nol prossed* with leave to re-indict, and the second set of charges was dismissed.

9.      Auto-Owners denied the Richeys' insurance claim on August 17, 2017. *See* Doc. 24-9.

**B.      Additional Findings of Undisputed Facts**

Upon careful review of the parties' briefs and all properly cited evidentiary materials, the Court finds the following additional undisputed material facts:

1.     Mrs. Richey's Auto-Owners Insurance Application

The purchase price of the 226 2nd Street home was $33,500, and the bond for title required the Richeys to purchase property insurance in the amount of $32,000. Doc. 24-1 at 1-2. Mrs. Richey executed an application for property insurance from Auto-Owners on January 24, 2017, two days before the first fire loss. Doc. 24-3 at 4. In her application, she requested $135,300 in dwelling coverage, over $100,000 more than required by the bond for title. *Id.* at 1. Auto-Owners issued a homeowner's insurance policy for the property to Mrs. Richey with the requested $135,300 of coverage. Doc. 24-4 at 10-11.

The Auto-Owners application Mrs. Richey executed and submitted requires an applicant to list all losses in the past five years. Doc. 24-3 at 1. Mrs. Richey indicated that she had suffered no losses in the past five years. *Id.* However, on November 18, 2016, approximately two months before Mrs. Richey executed the Auto-Owners application, the Richeys suffered a total fire loss to their home in Hueytown, Alabama. Doc. 24-2 at 16.

The application also requires an applicant to disclose whether she has filed "personal bankruptcy [or] had repossessions, court judgments or substantially past due mortgage, utility or property tax payments" within the past five years. Doc. 24-3 at 3. Mrs. Richey indicated that she had not. *Id.* Mrs. Richey, however, filed bankruptcy on April 15, 2016, and the bankruptcy action remained pending at the time the application was executed and at the time of both fires. Doc. 24-12.

Finally, the application requires an applicant to list any personal property to be specifically insured, including fine arts and jewelry. Doc. 24-3 at 3. Mrs. Richey did not

list any items.[2] *Id.* However, as will be discussed below, Mrs. Richey filed a sworn Proof of Loss with Auto-Owners two weeks later claiming more than $113,000 in personal property, including artwork valued at more than $80,000 and a Rolex watch. Doc. 24-13.

Mr. Richey picked up the application from Auto-Owners' office and took it home for Mrs. Richey to review and sign. Doc. 24-2 at 21. Mrs. Richey signed the application at home, indicating that the information contained in the application was true to the best of her knowledge. Doc. 24-3 at 4. Mrs. Richey admits that she had the opportunity to review the application before signing it, but neither Mrs. Richey nor Mr. Richey read the application before Mrs. Richey signed it. Docs. 24-2 at 21, 28 at 5.

Following standard Auto-Owners underwriting guidelines, policies, and procedures, had the application been accurate—notifying Auto-Owners of the recent 2016 fire loss and pending bankruptcy action—Auto-Owners would not have issued an insurance policy to Mrs. Richey. Doc. 24-11 ("[H]ad the [a]pplication executed by Sharon Richey disclosed the bankruptcy and the November 2016 fire loss, based upon Auto-Owners' normal practice, the policy would not have been written. In the event that such a risk had been accepted . . . and the policy written, a higher premium would have been charged.").

## 2.   Fire Losses of the Insured Property

As noted above, two fire losses occurred at the 226 2nd Street property, the first on January 26, 2017 and the second on February 26, 2017. Doc. 24-2 at 17. After investigating the first fire, Fire Investigator Sergeant J.J. Williams and Lt. Peoples surmised that the fire

---

[2] Additionally, in her initial bankruptcy petition filed less than nine months before the January 26, 2017 fire, Mrs. Richey answered "[n]o" on the petition when asked whether she owned any "[c]ollectibles of value," including "paintings, prints, or other artwork." Doc. 24-6 at 39.

may have started when someone in Plaintiffs' household disposed of a smoking cigarette butt in a trash can within the home. Doc. 28 at 15. The fire was ruled accidental. *Id.* at 15, 16. Lt. Peoples noted, however, that "[f]urther investigation is required into this incident and will remain an open case until all leads can be followed." *Id.* at 16. Following the first fire, Plaintiffs moved out of the 226 2nd Street residence into temporary housing. *Id.* at 3.

Plaintiffs allege they discovered the home had burned a second time on February 27, 2017, the day after the second fire was extinguished by the Montgomery Fire Department. On that day, Mr. Richey and Devin Frazier went to the house—for what Mr. Richey alleges was the first time since they had moved to temporary housing—to check the mail. *Id.* at 31-32; 24-29 at 13. Upon discovering the house had burned a second time, Mr. Richey immediately called Auto-Owners. Doc. 24-29 at 13. Auto-Owners hired a fire investigation service company, Southeastern Origin & Cause, to conduct an origin and cause investigation of the second fire. Doc. 24-20 at 1. After investigating the second fire, Certified Fire Investigator John Evers of Southeastern Origin & Cause determined that the fire was caused by "an intentional act by human involvement." *Id.* at 2. Mr. Evers based his conclusion on a number of findings, including that the fire had "two non-connecting areas of origin" and all electrical components in the home had been turned off following the first fire. *Id.*

Following the second fire, one of Plaintiffs' neighbors, Mary McKenzie, submitted a Voluntary Statement Form to the Montgomery Fire Department Bureau of Investigations. Doc. 24-22. In her statement, Ms. McKenzie stated that on the night of the second fire she saw "3 male teenagers (white) leaving from the alleyway between 2nd and 3rd street behind

[her] house," one of whom "look[ed] like one of the kids who used to live at 226 2nd." *Id.* Ms. McKenzie also told Mr. Evers that she believed one of the males she saw was the Richeys' eldest son. Doc. 24-20 at 2.

Mrs. Richey testified that she understood why the two fire losses at the 226 2nd Street home led to an arson investigation and that it was reasonable for there to be an investigation as to whether the fires were intentionally set. Doc. 24-2 at 35-36. Mr. Richey agreed that it was reasonable to investigate why the same house caught fire twice in one month. Doc. 24-29 at 7.

### 3. The Richeys' Representations Following the Fire Losses

At some point between the first and second fire, the Richeys submitted a contents list to Auto-Owners identifying, among other things, a $44,815 painting (entitled "the Chess Game"), two $18,000 paintings, a $4,000 Rolex watch, and eight WWE wrestling belts totaling more than $3,000. Doc. 24-14 at 1, 2, 6. Following the second fire, the Richeys submitted a second contents list that differed from the first, valuing the Chess Game painting at $245.99, omitting the two $18,000 paintings entirely, valuing the Rolex watch at $10,100, and listing only four WWE wrestling belts totaling approximately $65. Doc. 24-17 at 2, 5, 13. The Richeys do not know which values are correct.[3]

---

[3] For instance, when asked about the wrestling belts, Mrs. Richey testified, "I have no idea how many Devin owns." Doc. 24-2 at 49. When asked about one of the two omitted $18,000 paintings, Mr. Richey testified, "[T]his can be thrown off, because I ain't have pictures of this hanging up." Doc. 24-29 at 17. And, when asked about the discrepancy in the Rolex value, Mr. Richey said he did not know its value. *Id.* at 23-24. The Richeys also do not know the value of the Chess Game painting. Doc. 24-2 at 41; *see also* Doc. 28 at 5 ("[I]t is unknown if the painting was an original or a copy.").

Mrs. Richey stated that they listed a value of $44,815 for the Chess Game painting because they were directed by an Auto-Owners employee to Google the painting's value. *Id.* at 43. However, Mrs. Richey previously testified that she had sought the value of the painting from an art appraiser in Birmingham. Doc. 24-10 at 3. Mr. Richey testified that he was expressly told to write that value down by an Auto-Owners employee. Doc. 24-29 at 20.

In addition to submitting two contents lists, the Richeys submitted two sworn proofs of loss. The first proof of loss, signed by Mrs. Richey on February 8, 2017, submits a claim of $113,529.05 for the home's contents and characterizes the house value as "priceless." Doc. 24-13. The second proof of loss, signed by Mrs. Richey on March 14, 2017, submits a claim of $24,367.86 for contents and values the house at $135,300. Doc. 24-19.

The Richeys testified that they understand that Auto-Owners cannot make an accurate decision on paying claims when it receives inaccurate information on the items being claimed. Doc. 24-2 at 49-50; Doc. 24-29 at 24.

### 4.    Criminal Proceedings Against the Richeys

On March 1, 2017, Lt. K.R. Peoples, an investigator with the Montgomery Fire Department Bureau of Investigations, sent a letter to Auto-Owners regarding the Richeys' fire loss claim. Doc. 24-5. In compliance with § 36-19-41, Ala. Code[4], the letter sought "any factual information in [Auto-Owners'] possession which is pertinent to this loss and has some relationship to the loss itself." *Id.* at 1.

---

[4] This statute authorizes law enforcement officials investigating a fire loss to request information from an insurer and requires an insurer to release the requested information and cooperate with law enforcement.

On March 1, 2017, Auto-Owners responded to Lt. Peoples' statutory request by submitting the following documents to Lt. Peoples: (1) Sworn Proof of Loss signed by Mrs. Richey; (2) Personal Property Inventory; (3) Mortgage Note with Conde-Milward Investments, LLC; (4) Bond for Title; (5) Auto-Owners Homeowners Policy No. 51-022-943-00 Declarations; (6) Title Information; and (7) Mrs. Richey's 2016 Chapter 13 Bankruptcy Petition. Doc. 24-6 at 1. On March 31, 2017, Auto-Owners supplemented its response with the second contents list and second proof of loss. Doc. 24-7. On April 4, 2017, Auto-Owners submitted another supplement with transcripts of the Richeys' examinations under oath. Doc. 24-8.

On April 3, 2017, Lt. Peoples signed two affidavits for the purpose of obtaining arrest warrants for the Richeys (Doc. 24-25), which were issued that same day (Doc. 24-26). On April 17, 2017, two weeks *after* criminal proceedings had already been initiated against the Richeys, Auto-Owners employee Reneeka Hawkins signed a Montgomery Fire Department Bureau of Investigations Prosecution Form.[5] Doc. 28 at 13. The form stated, "[H]aving been advised by Investigator Lieutenant K.R. Peoples . . . that evidence indicates" the Richeys committed a criminal offense in relation to the first fire loss, Auto-Owners wished to "pursue the prosecution of . . . any person or persons found to be involved with the commission of this offense." *Id.*

---

[5] In their response in opposition, Plaintiffs argue that Lt. Peoples began investigating the Richeys "in response to a request from the Defendants to initiate a Fraudulent insurance claim. (exhibit 4)." Doc. 28 at 3. However, Plaintiffs' Exhibit 4, the prosecution form, makes clear that Auto-Owners did not indicate its "wish to pursue the prosecution" of Plaintiffs until nearly two months after Lt. Peoples first contacted Auto-Owners and two weeks after arrest warrants were issued for the Richeys. *Id.* at 13.

In July 2017, the Richeys were indicted by the Montgomery County Grand Jury on charges of felony insurance fraud. Doc. 2-1 at ¶ 23. In September 2017, the charges against the Richeys were *nol prossed* by motion of the State of Alabama with leave to re-indict. *Id.* at ¶ 24. In October 2017, the Richeys were re-indicted for first degree insurance fraud and, on October 24, 2017, a second set of arrest warrants were issued. *Id.* at ¶ 25; Doc. 24-27. On November 15, 2017, the Richeys were arrested pursuant to those warrants. Doc. 2-1 at ¶ 26; Doc. 24-27. Finally, on April 10, 2018, the charges against the Richeys were dismissed. Doc. 2-1 at ¶ 29.

The Richeys both testified that they are unaware of anything that anyone at Auto-Owners said or did that led to criminal charges being filed against them. Doc. 24-2 at 54-55; 24-29 at 8-9. Additionally, the Richeys both testified that they understand law enforcement requested that Auto-Owners cooperate with an investigation. Doc. 24-2 at 61; Doc. 24-29 at 9-10.

### 5.   Other Fire Losses

All four homes Mrs. Richey owns or has previously owned have been insured and have been damaged or destroyed by fire. Doc. 24-2 at 18. In 2005, Mrs. Richey recovered insurance proceeds after a stove fire damaged her kitchen. *Id.* at 7-9. In 2011, Mrs. Richey recovered insurance proceeds after her home was completely destroyed by fire. *Id.* at 11-12. In November 2016, as mentioned above, the Richeys' Hueytown residence, which was also insured, was completely destroyed by fire. *Id.* at 15.

6.   <u>Access to the Home and the Richeys' Financial Condition</u>

According to Mr. Richey, the 226 2nd Street home was locked between the first fire at the property and the second fire. Doc. 24-29 at 14-15. As far as he knew, no one had keys to the house other than Mrs. Richey and himself. *Id.* at 15. When Sergeant Williams arrived at the property following the first fire to commence his investigation, all gas and power utilities were turned off. Doc. 28 at 15.

Neither of the Richeys were employed at the time of the 226 2nd Street fire losses. Doc. 24-18 at 3-4. Although Mrs. Richey received $1,200 per month in food stamps before moving to Montgomery in late 2016, she no longer received food stamps at the time of the fires. *Id.* Mr. Richey received disability payments of $679 per month, which was the Richeys' only source of income for their household of ten. *Id.* The Richeys reported that their normal monthly expenses totaled $4,613.27, of which the disability payments fell well short. *See* Doc. 24-21 at 1.

## IV.   DISCUSSION

Plaintiffs' suit against Auto-Owners asserts claims for breach of contract, bad faith, malicious prosecution, and false imprisonment. Doc. 2-1. Auto-Owners moves for summary judgment on the following grounds: (1) Plaintiffs' breach of contract claim fails under the Exclusions and Concealment or Fraud provisions of the insurance policy; (2) Plaintiffs' bad faith claim fails because they cannot demonstrate that Auto-Owners breached the contract or that Auto-Owners lacked a legitimate basis to deny Plaintiffs' claim; (3) Plaintiffs' malicious prosecution claim fails because Auto-Owners neither initiated criminal proceedings against Plaintiffs nor lacked probable cause to do so; and (4)

Plaintiffs' false imprisonment claim fails because Plaintiffs were arrested pursuant to two valid search warrants.[6] *See generally* Doc. 26.

### A.   Plaintiffs' Breach of Contract Claim

To state a breach of contract claim in Alabama, Plaintiffs must show (1) the existence of a valid contract binding the parties in the action; (2) their own performance under the contract; (3) Auto-Owners' nonperformance; and (4) damages. *See S. Med. Health Sys., Inc. v. Vaughn*, 669 So.2d 98, 99 (Ala. 1995) (citations omitted). At issue here is the parties' respective performance under the insurance contract. Auto-Owners argues that it denied the Richeys' insurance claim because they failed to perform under the contract by violating two provisions of the insurance policy: the Exclusions provision and the Concealment or Fraud provision. Doc. 24-9.

### 1.   Exclusions Provision

The Exclusions provision of the policy provides that Auto-Owners will "not cover loss to covered property caused directly or indirectly by . . . [a]n action by or at the direction of any insured committed with the intent to cause a loss." Doc. 24-4 at 23. Auto-Owners denied the Richeys' claim under this provision on the basis that there was substantial evidence that Plaintiffs committed arson. Doc. 24-9.

"Arson by an insured is an absolute defense to an action upon [an insurance] policy, even in the absence of language in the policy so providing." *Mueller v. Hartford Ins. Co. of Ala.*, 475 So.2d 554, 557 (Ala. 1985) (citation omitted). To establish a case of arson

---

[6] Auto-Owners also argues that Mr. and Mrs. Richey, not Devin Frazier or their other minor children, are the only proper parties to this suit. Doc. 26 at 25-26. Because the Court finds that Auto-Owners is entitled to summary judgment as to all claims, the Court need not address this argument.

sufficient for summary judgment, Auto-Owners must show that "(1) the fire was intentionally set; (2) [the insured] had a motive for committing the alleged arson; and (3) [the insured] either set the fire or had it set, which may be proved by unexplained surrounding circumstantial evidence implicating [the insured]." *Pearson v. Travelers Home & Marine Ins. Co.*, 2014 WL 4681939, at *12 (N.D. Ala. Sept. 18, 2014), *aff'd*, 608 F. App'x 883 (11th Cir. 2015) (citing *Shadwrick v. State Farm Fire & Cas. Co.*, 578 So.2d 1075, 1077 (Ala. 1991)).

Motive to commit arson can be deduced from an insured's financial difficulties at the time of the fire. *See Pearson*, 2014 WL 4681939, at *12 (citing *Shadwrick*, 578 So.2d at 1078). That the insured either set the fire or directed it to be set can be proven by circumstantial evidence, including that no one other than the insured and her family had access to the house, that the insured was the last person inside the house, and that there was no possibility of others having entered the house. *Id.*[7] If the undisputed evidence is sufficient to establish an affirmative defense of arson, the Court may award summary judgment. *Pearson*, 2014 WL 4681939, at *12 (citing *Quarles v. Nationwide Prop. & Cas. Ins. Co.*, 509 F. App'x 914, 915 (11th Cir. 2013) (affirming summary judgment on arson defense because "the undisputed evidence before the court was sufficient to establish the affirmative defense of arson and support a summary judgment in favor of [the insurer].")).

---

[7] *See also Great Southwest Fire Ins. Co. v. Stone*, 402 So.2d 899, 900 (Ala. 1981) ("It is not necessary for the insurer to prove the defense of arson beyond all reasonable doubt, but a preponderance of the evidence suffices. Such proof may be made by circumstantial evidence, if the inferences are not too remote and all circumstances, including the inferences, are of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by a fair preponderance of the evidence.").

a.    *Intent Element*

The undisputed evidence establishes the first element of the affirmative defense of arson for the Richeys' insurance claim—the second fire was intentionally set.[8] In their response in opposition, Plaintiffs correctly note (without citation to the record) that the January 26, 2017 fire was ruled accidental. Doc. 28 at 5. However, Plaintiffs do not address the investigative report before the Court determining that the February 26, 2017 fire was an intentional act by human involvement, nor do they dispute that the second fire was intentionally set. Rather, with respect to the second fire, they state only (again, without citation to the record or any evidentiary support) that "the secondary fire damage was in no way attributed to the Plaintiff, but to vagrants in the area." Doc. 28 at 3. Thus, for purposes of this order, it is undisputed that the second fire was intentionally set.

b.    *Motive Element*

With respect to the second element, there is ample undisputed evidence in the record that Plaintiffs had motive for committing arson. At the time of the events in question, Plaintiffs had filed for bankruptcy. Plaintiffs had a household of at least ten people, none of whom were employed. At the time of the fires, Plaintiffs' household relied solely on Mr. Richey's monthly disability payment of $679, but their monthly expenses exceeded that amount by thousands of dollars. Although Mrs. Richey received $1,200 per month in food

---

[8] It appears that only one insurance claim was filed with respect to both the January 26 and the February 26 fires. *See* Doc. 24-9 at 1 ("Your claim submitted under Auto-Owners Policy No. 51-022-943-00 issued to Sharon Richey sought coverage for damage sustained at 226 2nd Street Montgomery, AL from two fires occurring on January 26, 2017 and February 26, 2017."). Thus, Auto-Owners need only establish the defense of arson as to one of the fires. *See Pearson*, 2014 WL 4681939, at *12 (granting summary judgment for insurer on arson defense where, like here, there were two separate fires but only the second was determined to have been intentionally set).

stamps before moving to Montgomery, she no longer received food stamps at the time of the fires.[9] Moreover, Mrs. Richey previously received insurance proceeds resulting from fire losses to each of her prior dwellings, and thus was on notice that a fire loss may result in monetary compensation. On these facts, Plaintiffs' financial situation supports a finding of motive to commit arson. *See Pearson*, 2014 WL 4681939, at *13 (finding motive where plaintiff was unemployed, her monthly expenses significantly exceeded her income from social security benefits, and a creditor had sued her for unpaid debt and obtained a default judgment); *see also Shadwrick*, 578 So.2d at 1078 (finding motive where plaintiff had insufficient income to support herself and her two daughters and where the proceeds from her fire insurance policy would allow her to pay off her debts).

c.   *Causation Element*

Finally, with respect to the third element, undisputed evidence demonstrates that the second fire was caused by the Richeys or at their direction. Mrs. Richey specifically requested $100,000 more in insurance coverage than required by her bond for title. Two days later, the house first caught fire. The house was locked between the first fire and the second fire, and Mr. and Mrs. Richey were the only individuals with keys to the house. Doc. 24-29 at 14-15. The night of the second fire, a neighbor testified she saw an individual who looked like the Richeys' eldest son in the alley behind the property. Despite no one telling the Richeys about the second fire, Mr. Richey and Devin Frazier returned to the

---

[9] It appears from the record that Mrs. Richey stopped receiving food stamps because she did not submit the necessary paperwork, not because her financial situation improved or her need for assistance lessened. Mr. Richey testified that Mrs. Richey "didn't have everything changed over when [they] got down" to Montgomery and, therefore, someone "cut [the food stamps] off" and Mrs. Richey "ain't getting nothing now." Doc. 24-18 at 4.

property the very next day and immediately called Auto-Owners. Additionally, as noted above, every single home Mrs. Richey has ever owned has suffered a fire loss, and she was paid insurance proceeds for each.

Taken as a whole, the undisputed facts are sufficient to establish that the second fire was caused by the Richeys or at their direction. *See Pearson*, 2014 WL 4681939, at \*13 (finding causation where only a few people had keys to the house and a neighbor reported seeing the insured's truck near the house the night of the fire); *see also Shadwrick*, 578 So.2d at 1078 (finding causation where plaintiff and her mother had the only keys to the house, all the doors and windows to the house were locked, and, when informed that her house was on fire, plaintiff seemed unconcerned and did not go check on the house until the following day). Plaintiffs' sole allegation that the second fire was, instead, attributed "to vagrants in the area" has no evidentiary support whatsoever, and it is insufficient to defeat summary judgment as to this claim. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.").

Therefore, the Court finds that all three elements for arson are supported by the record, giving Auto-Owners the defense to the breach of contract claim and a basis for not paying on the policy: the Richeys violated the Exclusions provision of their insurance policy.

### 2.    Concealment or Fraud Provision

As an independent ground for granting summary judgment on Plaintiffs' breach of contract claim, the undisputed evidence demonstrates that Plaintiffs violated the

Concealment or Fraud provision of the insurance policy. This provision provides that the "entire policy is void if, whether before, during or after a loss, any insured has . . . intentionally concealed or misrepresented any material fact or circumstance . . . engaged in fraudulent conduct . . . or . . . made false statements[] relating to this insurance." Doc. 24-9 at 3. Auto-Owners denied the Richeys' insurance claim under this provision on the basis that they had intentionally made numerous material misrepresentations to Auto-Owners. *Id.*

a.   *Material Misrepresentations*

It is undisputed that Mrs. Richey's insurance application contained several inaccuracies. First, Mrs. Richey stated that she had not suffered any losses in the past five years when, in fact, she had suffered a total fire loss to her home approximately two months earlier. Doc. 24-3 at 1. Second, Mrs. Richey stated that she had not filed bankruptcy in the past five years when, in fact, she had filed bankruptcy in April 2016, which remained pending when she completed her insurance application. *Id.* at 3. Third, Mrs. Richey did not list any personal property to be specifically insured, including fine arts or jewelry, despite later attempting to claim more than $113,000 in personal property, which included artwork and a Rolex. Doc. 24-13.

It is undisputed that, despite having an opportunity to review the Auto-Owners insurance application before signing it, neither of the Richeys read it before signing. However, this does not absolve the Richeys from responsibility for its contents. Indeed, "[a]bsent misrepresentations, fraud, or other deceit by [an] agent, a person able to read and write is bound by an insurance application signed by him or her, whether or not he or she

20

reads it." *Nationwide Mut. Fire Ins. Co. v. Pabon*, 903 So.2d 759, 767 (Ala. 2004) (citing *First Nat'l Life Ins. Co. of America v. Maxey*, 25 Ala. App. 289, 291 (1932)). Mrs. Richey, who alone signed the document, testified that she can read and write, Doc. 24-2 at 2, and Plaintiffs do not allege misrepresentation, fraud, or deceit by any Auto-Owners agents with respect to the application.

To the extent Plaintiffs maintain that Mrs. Richey verbally answered the questions in the application correctly, but they were written down incorrectly by an Auto-Owners agent, that argument has been expressly rejected by the Alabama Supreme Court in *Pabon*, 903 So.2d at 767-68. There, like here, the insured argued that she verbally answered the questions on the application correctly, but the insurer's agent incorrectly recorded the information, which the insured failed to notice. *Id.* at 767. The Court held that the insured was nonetheless bound by the answers in the application, stating, "[b]ecause [the insured] was given the opportunity to review the answers on the insurance application before she signed it, we reject the argument[] that [the insurer's] agent created the inaccuracies on the application." *Id.* Thus, whether she or an Auto-Owners agent filled in the application, Mrs. Richey is responsible for the information contained therein.

It is also undisputed that, between the first and second fires, the Richeys submitted a contents list to Auto-Owners containing a $44,815 painting called the Chess Game, two $18,000 paintings, a $4,000 Rolex watch, and eight WWE wrestling belts totaling more than $3,000. It is further undisputed that, following the second fire, the Richeys submitted a second contents list that was very different, valuing the Chess Game at $245.99, omitting the two $18,000 paintings entirely, valuing the Rolex watch at $10,100, and listing only

four WWE wrestling belts totaling approximately $65. Additionally, the Richeys submitted two contrary proofs of loss, with the first claiming $113,529.05 for contents and a "priceless" value for the house and the second claiming $24,367.86 for contents and $135,300 for the house.

Finally, it is undisputed that the Richeys submitted each of these values and quantities to Auto-Owners without knowing if the values and quantities were accurate. Plaintiffs admit that "it is unknown if the [Chess Game] painting was an original or a copy," Doc. 28 at 5, and Mrs. Richey gave conflicting testimony as to whether she got the $44,815 value from an art appraiser or an Auto-Owners employee. Plaintiffs fail to explain any reason for including and then omitting two $18,000 paintings, stating only that they do not have proof of ownership of those paintings. Plaintiffs fail to explain why the Rolex was first listed as $4,000 and later listed as more than $10,000. Mrs. Richey admits that she does not know how many WWE wrestling belts were lost, and she fails to explain their significant price discrepancy from the first list to the second.

The material misrepresentations made by Plaintiffs in their application and subsequent claim were plentiful and substantial. Given the misrepresentations in the application, Auto-Owners avers that, had it been given accurate information, it would not have issued an insurance policy to the Richeys. Further, given the significant discrepancies in the contents lists and proofs of loss, the amount Auto-Owners should have been expected to pay is unascertainable. In fact, Plaintiffs themselves admit that they do not know the quantity or the worth of their listed contents. *See Hillery v. Allstate Indem. Co.*, 705 F. Supp. 2d 1343, 1363 (S.D. Ala. 2010) (granting summary judgment for insurer as to breach

of contract claim because "it was obviously impossible for [the insurer] to adjust or pay plaintiffs' claim without correct information concerning the personal property that had been lost or damaged in the fire").

> b. *Intent*

Material misrepresentations alone, however, are insufficient to void an insurance policy in Alabama; the misrepresentations must also be intentional. *See* Ala. Code § 27-14-28 ("No misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such misrepresentation is made with actual intent to deceive . . . ."). Although a finding of intent is often left to a jury, "Alabama law does not erect an absolute bar to finding intent at the summary judgment stage: when no material facts remain at issue with respect to the party's intent, summary judgment can be appropriate." *Pearson*, 2014 WL 4681939, at *14 (citing *Kennamer v. Guide One Ins.*, 2012 WL 5426481, at *2-3 (N.D. Ala. Nov. 5, 2012)).

In *Kennamer*, the court granted summary judgment in favor of a defendant-insurer when the plaintiff-insured failed to rebut evidence that she had misrepresented in a proof of loss that several high-value items had been destroyed by a house fire. *Kennamer*, 2012 WL 5426481, at *2-3. The court inferred that the misrepresentations were intentional because they were "extravagant over-evaluations." *Id.* at *2. Other courts have made similar inferences based on inaccurate contents lists and proofs of loss. *See Pearson*, 2014 WL 4681939, at *15 (citing *Home Ins. Co. v. Hardin*, 528 S.W.2d 723, 725 (Ky. 1975) ("[A] sworn proof of loss which includes numerous nonexistent items voids the entire policy as a matter of law."); *Mut. of Enumclaw Ins. Co. v. Cox*, 757 P.2d 499, 502 (Wash.

1988) ("There is ample evidence from the trial record that [the insured] committed fraud by including numerous items on his inventory list which were not at his . . . house when the fire occurred.")).[10]

In this case, given the number of misrepresentations the Richeys made to Auto-Owners; the extreme discrepancies in their contents lists, for which they provided either no explanation or conflicting explanations; their admittance that, despite knowingly and willfully completing and submitting the contents lists, they do not actually know the quantity or value of many of the included items; the fact that the contradictory proofs of loss were both sworn under oath; and the undisputed evidence supporting a finding of arson, as discussed above, the undersigned finds that, as a matter of law, Plaintiffs' misrepresentations were intentional.[11]  *See Pearson*, 2014 WL 4681939, at *16 (finding, as a matter of law, that plaintiff's misrepresentation was intentional where she falsely claimed highly valuable and unique items, such as artworks by Picasso and Rembrandt, and signed her proof of loss under oath). Therefore, the Court finds that Plaintiffs violated the Concealment or Fraud provision under the insurance policy and, thus, cannot establish a breach of contract claim against Auto-Owners.

---

[10] *See also Columbian Ins. Co. of Ind. v. Modern Laundry*, 277 F. 355, 360-61 (8th Cir. 1921) ("[W]here the insured knowingly and willfully makes a false statement of or regarding a material fact in its proof of loss, or in its testimony regarding the value of the property insured, or the loss or damage thereto by fire, the intention to deceive the insurer is necessarily implied as the natural consequence of such act . . . .") (citing *Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 95 (1884)).

[11] Plaintiffs have presented a photograph of the Chess Game painting, which they argue proves its existence. Doc. 28 at 21. However, even assuming, *arguendo*, that Plaintiffs owned the Chess Game painting at the time of the fires and lost the painting in the fires, that does not alter the Court's finding that Plaintiffs made numerous intentional, material misrepresentations to Auto-Owners nor does it mean Plaintiffs did not intentionally misrepresent the painting's value. Indeed, regardless of its existence, Plaintiffs admit that they do not know whether the painting is an original or a copy, despite listing the value of the painting as an original on the initial contents list.

**B.      Plaintiffs' Bad Faith Claim**

To state a bad faith claim in Alabama, Plaintiffs must demonstrate the following: (1) an insurance contract between the parties and a breach by the defendant; (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and (5) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. *State Farm Fire and Cas. Co. v. Brechbill*, 144 So.3d 248, 256 (Ala. 2013).

As an initial matter, Plaintiffs cannot satisfy the first element because, as addressed above, Auto-Owners did not breach its contract with Plaintiffs. *See State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 318 (Ala. 1999) ("[U]nless the plaintiff is entitled to recover on the contract, a bad faith claim cannot be maintained."). Additionally, even if Auto-Owners had breached its contract when it denied Plaintiffs' insurance claim, the arson investigation by law enforcement, the inconsistency of Plaintiffs' submissions, and the suspect circumstances surrounding the fires, all of which are thoroughly addressed above, constitute a reasonably legitimate or arguable basis for refusing to pay the claim. *See Dempsey v. Auto Owners Ins. Co.*, 717 F.2d 556, 560 (11th Cir. 1983) (to state a bad faith claim, a "plaintiff must go beyond a mere showing of nonpayment and prove a . . . nonpayment without any reasonable ground for dispute") (citing *National Sec. Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982)). Thus, Auto-Owners is entitled to summary judgment as to Plaintiffs' bad faith claim.

### C.      Plaintiffs' Malicious Prosecution Claim

To state a malicious prosecution claim in Alabama, Plaintiffs must demonstrate that (1) a judicial proceeding was initiated by Defendant against Plaintiffs; (2) the proceeding was instituted without probable cause; (3) the proceeding was instituted by Defendant maliciously; (4) the proceeding was terminated in favor of Plaintiffs; and (5) Plaintiffs suffered damage as a proximate cause of the proceeding. *Allen v. Victoria's Secret Stores, LLC*, 559 F. App'x 882, 883 (11th Cir. 2014) (citing *Eidson v. Olin Corp.*, 527 So.2d 1283, 1284 (Ala. 1988)). In this case, the undisputed evidence demonstrates that Auto-Owners did not initiate judicial proceedings against Plaintiffs and, even if they had, there was probable cause to institute those proceedings.

"[M]erely providing . . . law enforcement officials with information is not sufficient to make one accountable for any prosecution which may result from such limited action." *Allen*, 559 F. App'x at 883 (citing *Cutts v. American United Life Ins. Co.*, 505 So.2d 1211, 1215 (Ala. 1987)). Indeed, "[where] a defendant merely gives the district attorney's office information regarding an alleged crime, leaving the decision to prosecute entirely to the uncontrolled discretion of the district attorney, who thereafter makes his own independent investigation and thereupon takes the information before the grand jury which returns indictments against the suspects, the defendant, in a malicious prosecution action, is not regarded as having instigated the criminal proceeding." *Cutts*, 505 So.2d at 1215 (citations omitted). "Giving information of a crime to officers, or a request that the officers investigate a crime is not aiding or abetting or instigating a prosecution, *unless such*

*information was a misrepresentation of the facts in order to induce action, or there was a suppression of known material facts.*" *Id.* (citations omitted) (emphasis in original).

It is undisputed that Auto-Owners participated in the Montgomery Fire Department's investigation of the Richeys by submitting materials to Lt. Peoples, *upon his request*, in accordance with Alabama Code § 36-19-41. The Richeys both testified that they understand law enforcement requested cooperation from Auto-Owners and that they do not fault Auto-Owners for complying with that request. Docs. 24-2 at 61, 24-29 at 9-10. Moreover, Plaintiffs do not argue that Auto-Owners misrepresented any facts or suppressed known material facts, and there is nothing in the record suggesting that occurred. Thus, nothing in the record indicates that Auto-Owners initiated a judicial proceeding against Plaintiffs. *See Cutts*, 505 So.2d at 1215.

Although Plaintiffs argue in their response that Auto-Owners initiated the investigation and prosecution of Plaintiffs, the only evidence they cite in support of that allegation says otherwise. *See* Doc. 28 at 3-4 (arguing that Lt. Peoples' investigation "was in response to a request from the Defendants to initiate a Fraudulent insurance claim. (exhibit 4)" and that all investigatory inquiries "were made after the defendants sought permission to pursue criminal charges against the Plaintiffs"). Plaintiffs' Exhibit 4 demonstrates that Auto-Owners did not indicate its wish to pursue the prosecution of Plaintiffs until nearly two months after Lt. Peoples first contacted Auto-Owners regarding his investigation of the Richeys and two weeks after arrest warrants had already been issued for the Richeys. Doc. 28 at 13. Plaintiffs offer no evidence suggesting this timeline is inaccurate.

Additionally, even if evidence in the record indicated that Auto-Owners initiated the criminal proceedings against the Richeys, the record demonstrates that the proceedings instituted against the Richeys were supported by probable cause. "A grand jury indictment constitutes *prima facie* evidence that probable cause existed for the prosecution." *Kelly v. Serna*, 87 F.3d 1235, 1241 (11th Cir. 1996) (citations omitted); *see also Stacks v. Pate*, 561 So.2d 1072, 1074 (Ala. 1990) ("[A] grand jury indictment [of a defendant in a prior judicial proceeding] is prima facie evidence of [the existence] of probable cause.") (citation and internal quotations omitted). To overcome a probable cause presumption, Plaintiffs must demonstrate that "the indictment was induced by fraud, subornation, suppression of testimony, or other like misconduct of the party seeking the indictment." *Stacks*, 561 So.2d at 1074 (citation and internal quotations omitted).

As previously noted, Plaintiffs have provided no evidence of misconduct by Auto-Owners in this case. To the contrary, the Richeys both testified that they are unaware of anything Auto-Owners did that led to criminal charges being filed against them. Docs. 24-2 at 54-55, 24-29 at 8-9. There is nothing in the record indicating that Auto-Owners engaged in misconduct regarding the Richey investigation. Thus, Auto-Owners is entitled to summary judgment on Plaintiffs' malicious prosecution claim.

### D.    Plaintiffs' False Imprisonment Claim

"Under Alabama law, '[f]alse imprisonment consists [of] the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty.'" *Harris v. Food Giant Supermarkets, Inc.*, 2017 WL 9732025, at *6 (M.D. Ala. Nov. 29, 2017) (citing Ala. Code § 6–5–170). "A claim for false imprisonment cannot lie

where Plaintiff was arrested based on a valid arrest warrant." *Id.* Indeed, "if an arrest is made pursuant to a warrant issued by a lawfully authorized person, neither the arrest nor the subsequent imprisonment is 'false' . . . ." *Blake v. Barton Williams, Inc.*, 361 So.2d 376, 378 (Ala. Civ. App. 1978) (citations omitted).

The Richeys were arrested pursuant to two valid search warrants issued by a person or persons lawfully authorized to do so. *See* Docs. 24-26, 24-27. As noted above, it is undisputed that each of the arrest warrants were issued following a grand jury indictment, which constitutes probable cause. Thus, regardless of Plaintiffs' feelings regarding the underlying charges for their arrests, Plaintiffs' false imprisonment claim fails as a matter of law, and Auto-Owners is entitled to summary judgment as to that claim.

## V.    CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

1.    Defendant's Motion for Summary Judgment (Doc. 23) is GRANTED.

2.    Judgment is GRANTED in favor of Defendant.

3.    This case is DISMISSED with prejudice.

Done this 15th day of October, 2020.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE